# No. 15-2857

# In the
# United States Court of Appeals
## for the Eighth Circuit

---

RYAN FERGUSON,

*Appellee,*

v.

JOHN SHORT, Detective, et al.,

*Appellants.*

---

Appeal from the United States District Court
for the Western District of Missouri – Jefferson City, No. 2:14-cv-04062-NKL.
The Honorable **Nanette K. Laughrey**, Judge Presiding.

---

## BRIEF OF APPELLEE

---

KATHLEEN T. ZELLNER
KATHLEEN T. ZELLNER
& ASSOCIATES, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
Email: kathleen.zellner@gmail.com

SAMUEL HENDERSON #56330
1027 S. Vandeventer Avenue
Floor 6
St. Louis, Missouri 60515
Phone: (314) 399-8266
Fax: (314) 399-8265
Email: hendersa85@hotmail.com

*Attorneys for Appellee Ryan Ferguson*

## ORAL ARGUMENT REQUESTED

---

 

# SUMMARY OF THE CASE

Defendants' Summary of the Case (App. Br. at 2) is incorrect in that Defendants did not sufficiently assert qualified and official immunity in their motion for summary judgment to permit review by this Court. Rather, they argued that Ferguson did not have standing for his claims and that Erickson's confession was not coerced. App. 273-336. Those arguments were not based upon immunity, and as the district court explained, Defendants' "arguments fundamentally misunderstand the premise of Ferguson's claim. Ferguson has not asserted that Erickson's guilty plea should be invalidated or that his confession or guilty plea was coerced." Order at 37; App. 9468. Defendants also argued to the district court that fabricated evidence was not used against Ferguson (App. 310-322) and that they were not liable for their reckless investigation because their investigation resulted in Erickson's guilty plea. App. 325. Neither of those arguments involved qualified immunity. In denying Defendants' motion, the district court determined that the pre-trial record set forth genuine issues of fact for trial and concluded that "Ferguson has presented evidence that could be determined by a jury to warrant a Plaintiff's verdict in this case." Order at 44; App. 9475. Ferguson submits that based upon the history of this case, there is a lack of jurisdiction and this case should be remanded to the district court for a jury trial.

Ferguson requests twenty minutes for oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ...........i

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ..........................................................v

JURISDICTIONAL STATEMENT ................................................1

STATEMENT OF THE ISSUES......................................................2

STATEMENT OF THE CASE..........................................................5

    Background ...............................................................................5

    Defendants' Investigation Beginning March 10, 2004 ....................6

    Charles Erickson Interviews.............................................................6

    Ryan Ferguson Interviews ................................................................9

    Dallas Mallory Interviews ..............................................................10

    Meghan Arthur Interviews...............................................................11

    Erickson Proffer and Guilty Plea....................................................12

    Investigation by Ferguson Defense Team .......................................14

    Interview of Meghan Arthur............................................................14

    Interview of Dallas Mallory ............................................................15

    Interview of Michael Boyd..............................................................16

    Criminal Trial of Ferguson .............................................................16

    Post-Conviction Relief ...................................................................17

Appellate Case: 15-2857    Page: 3    Date Filed: 03/22/2016 Entry ID: 4380398

Subsequent Testimony Related to this Action...............................................19

Dallas Mallory Testimony ...........................................................................19

Meghan Arthur Testimony ...........................................................................19

Charles Erickson Testimony.........................................................................20

SUMMARY OF THE ARGUMENT .....................................................................21

ARGUMENT ......................................................................................................22

I.      DEFENDANTS HAVE WAIVED THE
        QUALIFIED IMMUNITY ARGUMENTS THEY
        NOW SEEK TO RAISE ................................................................22

II.     BECAUSE DEFENDANTS BASE THEIR
        QUALIFIED IMMUNITY ARGUMENTS ON "FACTS"
        THAT THE DISTRICT COURT REJECTED DURING
        SUMMARY JUDGMENT, THERE IS NO JURISDICTION
        OVER THEIR APPEAL ...................................................................25

III.    FERGUSON'S CLAIMS ARE NOT AN IMPROPER ATTEMPT
        TO CHALLENGE ERICKSON'S CONVICTION..............................31

IV.     GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM
        TO BE FOR THE PURPOSES OF SUMMARY JUDGMENT,
        DEFENDANTS VIOLATED FERGUSON'S RIGHTS TO
        SUBSTANTIVE DUE PROCESS BY FABRICATING EVIDENCE
        THAT WAS USED TO CAUSE HIS DAMAGES ............................33

        A.      The Fabricated Evidence caused Ferguson's Injuries ..............36

                1.      Crane did not exercise independent judgment that
                        severed the causal connection between the fabricated
                        evidence and Ferguson's injury ......................................36

        B.      Erickson did not Exercise Independent Judgment after
                Defendant Officer's Fabrication of Evidence ...........................40

iii

C.    A Reasonable Juror would find that the Fabricated
Evidence was the Proximate cause of Ferguson's
injuries .......................................................................... 44

D.    Defendants' Conduct Violated Ferguson's Due
Process Rights ............................................................. 46

V.    GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM
TO BE FOR PURPOSES OF SUMMARY JUDGMENT,
DEFENDANTS VIOLATED FERGUSON'S RIGHTS TO
SUBSTANTIVE DUE PROCESS BY ENGAGING IN A
RECKLESS INVESTIGATION AND CAUSING HIS
DAMAGES .......................................................................... 55

VI.    GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM
TO BE FOR PURPOSES OF SUMMARY JUDGMENT,
DEFENDANTS CONSPIRED TO DEPRIVE FERGUSON
OF HIS CONSTITUTIONAL RIGHTS ............................................... 63

VII.    GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM
TO BE FOR THE PURPOSES OF SUMMARY JUDGMENT,
DEFENDANTS MALICIOUSLY PROSECUTED AND
FALSELY ARRESTED FERGUSON ............................................... 68

CONCLUSION ................................................................. 71

iv

# TABLE OF AUTHORITIES

*Akins v. Epperly,*
588 F.3d 1178 (8th Cir. 2009) ....................................................4, 56, 57

*Ames v. United States*,
600 F.2d 183 (8th Cir. 1979) ........................................................38

*Amrine v. Brooks*,
522 F.3d 823 (8th Cir. 2008) .....................................................58, 59

*Berryman v. Rieger*,
150 F.3d 561 (6th Cir. 1998) ......................................................2, 29

*Blue v. Harrah's N. Kan. City*,
170 S.W.3d 466 (Mo. App. 2005) .................................................4, 68

*Brady v. Maryland*,
373 U.S. 83 (1963).................................................................19, 66

*Camfield Tire, Inc. v. Michelin Tire Corp.*,
719 F.2d 1361 (8th Cir. 1983) ..........................................................46

*Clemmons v. Armontrout*,
477 F.3d 962 (8th Cir. 2007) ...........................................................58

*Cooper v. Martin,*
634 F.3d 477 (8th Cir. 2011) ...........................................................56

*Deck v. Leftridge,*
771 F.2d 1168 (8th Cir. 1985) ......................................................4, 64

*Hayward v. Cleveland Clinic Found.*,
759 F.3d 601 (6th Cir. ..............................................................3, 32

*Heck v. Humphrey*,
512 U.S. 447 (1994).........................................................3, 24, 31, 32

Appellate Case: 15-2857    Page: 6    Date Filed: 03/22/2016 Entry ID: 4380398

*James v. Paul*,
49 S.W.3d 678 (Mo. banc 2001) ....................................................3, 32

*Johnson v. Jones*,
515 U.S. 304 (1995) ..........................................................1, 2, 25, 28

*Jones v. City of Chicago*,
856 F.2d 985 (7th Cir. 1988) .........................................................3, 38

*Livers v. Schenck*,
700 F.3d 340 (8th Cir. 2012) ............................................................51

*Moad v. Ark. State Police Dep't*,
111 F.3d 585 (8th Cir. 1997) .........................................................2, 22

*Mooney v. Holohan*,
294 U.S. 103 (1935) ..........................................................................53

*Moran v. Clarke*,
296 F.3d 638 (8th Cir. 2002) ............................................................55

*Myers v. Morris*,
810 F.2d 1437 (8th Cir. 1987) ....................................................4, 38, 67

*Neb. Beef, Ltd. v. Greening*,
398 F.3d 1080 (8th Cir. 2005) ........................................................4, 70

*Niere v. St. Louis Cnty., Missouri*,
305 F.3d 834 (8th Cir. 2002) .............................................................33

*O.R.S. Distilling Co. v. Brown–Forman Corp.*,
972 F.2d 924 (8th Cir. 1992) .........................................................2, 22

*Pace v. City of Des Moines*,
201 F.3d 1050 (8th Cir. 2000) ...................................................26, 28, 29

*Singleton v. Wulff*,
428 U.S. 106 (1976) ......................................................................2, 22

Appellate Case: 15-2857     Page: 7     Date Filed: 03/22/2016 Entry ID: 4380398

*Smith v. City of Des Moines, Iowa,*
  99 F.3d 1466 (8th Cir. 1996) .........................................................................2, 22

*State v. Pendleton,*
  910 S.W.2d 268 (Mo. App. 1995) ..........................................................57

*State v. Polley,*
  2 S.W.3d 887 (Mo. App.1999) ..........................................................33

*State* v. *Vogt,*
  304 S.W.3d 209 (Mo. App. 2009) ..........................................................4, 57

*Sykes v. Anderson,*
  625 F.3d 294 (6th Cir. 2010) ..........................................................38

*Thomas v. Talley,*
  251 F.3d 743 (8th Cir. 2001) ..........................................................2, 26, 28, 29

*White v. McKinley,*
  519 F.3d 806 (8th Cir. 2008) ..........................................................4, 64

*White v. Smith,*
  696 F.2d 740 (8th Cir. 2012) ..........................................................*passim*

*Williams v. Finance Plaza, Inc.,*
  78 S.W.3d 175 (Mo. App. 2002) ..........................................................3, 33

*Wilson v. Lawrence County,*
  260 F.3d 946 (8th Cir. 2012) ..........................................................*passim*

*Winslow v. Smith,*
  696 F.3d 716 (8th Cir. 2012) ..........................................................*passim*

**Statutes**

U.S.C. § 1983 ..........................................................................................1, 33

28 U.S.C. § 1331 ..........................................................................................1

Appellate Case: 15-2857    Page: 8    Date Filed: 03/22/2016 Entry ID: 4380398

28 U.S.C. § 1343 .................................................................................................1

28 U.S.C. § 1367 ...............................................................................................18

Appellate Case: 15-2857    Page: 9    Date Filed: 03/22/2016 Entry ID: 4380398

# JURISDICTIONAL STATEMENT

Defendants are correct that the district court had subject matter jurisdiction over Plaintiff's U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and § 1343. The district court also had supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as these arose out of the same nucleus of operative facts as did the federal claims.

Defendants are mistaken, however, as to this Court's jurisdiction over the interlocutory appeal as they have framed it. An interlocutory appeal from a denial of summary judgment on qualified immunity grounds is limited to only "pure" issues of law. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). This Court has no jurisdiction to review the district court's findings regarding the sufficiency of the evidence. *Id.* In order to raise a pure issue of law, the Defendants must concede the district court's factual findings.

Defendants' arguments variously challenge the district court's factual findings, either expressly or implicitly, by relying on facts that the district court already rejected. This Court has no jurisdiction over such an appeal.

This Court may, if it chooses, try to separate out the issues of law by disregarding the misconstrued facts and then applying Defendants' legal arguments to the facts. But this Court is not required to engage in this onerous task to save Defendants' appeal. Ferguson addresses this issue further in the Argument below.

1

## STATEMENT OF THE ISSUES

I.    Whether the appeal should be dismissed because Defendants
waived their new arguments based upon qualified immunity because
Defendants failed to raise them in the district court?

*Singleton v. Wulff,* 428 U.S. 106, 120 (1976)

*Moad v. Ark. State Police Dep't,* 111 F.3d 585, 587 (8th Cir. 1997)

*Smith v. City of Des Moines, Iowa,* 99 F.3d 1466, 1473 (8th Cir. 1996)

*O.R.S. Distilling Co. v. Brown–Forman Corp.,* 972 F.2d 924, 926 (8th
Cir. 1992)

II.    Whether the  appeal should be dismissed because Defendants' new
immunity arguments are predicated on, and entangled with, facts that
the district court resolved against them such that they fail to raise pure
issues of law?

*Johnson v. Jones,* 515 U.S. 304 (1995)

*Thomas v. Talley*, 251 F.3d 743, 746-47 (8th Cir. 2001)

*Berryman v. Rieger,* 150 F.3d 561 (6th Cir. 1998)

Appellate Case: 15-2857   Page: 11   Date Filed: 03/22/2016 Entry ID: 4380398

III. Whether Ferguson's claims are an improper attempt to challenge Erickson's conviction?

*Heck v. Humphrey*, 512 U.S. 447 (1994)

*Hayward v. Cleveland Clinic Found.,* 759 F.3d 601, 616 (6th Cir. 2014)

*James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001)

*Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175, 183 (Mo. App. 2002)

IV. Given the facts as the district court found them to be for purposes of summary judgment, did Defendants violate Ferguson's rights to substantive due process by fabricating evidence that was used to cause his damages?

*Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012)

*Jones v. City of Chicago,* 856 F.2d 985, 993-994 (7th Cir. 1988)

*Wilson v. Lawrence County,* 260 F.3d 946 (8th Cir. 2012)

*White v. Smith*, 696 F.2d 740 (8th Cir. 2012)

V. Given the facts as the district court found them to be for purposes of summary judgment, did Defendants violate Ferguson's rights to substantive due process by performing a reckless investigation and causing his damages?

3

*Wilson v. Lawrence County,* 260 F.3d 946 (8th Cir. 2001)

*Akins v. Epperly,* 588 F.3d 1178, 1184 (8th Cir. 2009)

*State* v. *Vogt*, 304 S.W.3d 209 (Mo. App. 2009)

VI.    Given the facts as the district court found them to be for purposes of summary judgment, did Defendants conspire to deprive Ferguson of his constitutional rights?

*White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008)

*Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985)

*Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987)

VII.    Given the facts as the district court found them to be for purposes of summary judgment, did Defendants maliciously prosecute and falsely arrest Ferguson?

*Blue v. Harrah's N. Kan. City,* 170 S.W.3d 466 (Mo. App. 2005)

*Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1083 (8th Cir. 2005)

4

## STATEMENT OF THE CASE

Defendants' Statement of the Case relies on disputed evidence in the record and presents a view of the facts in this case that the district court resolved against them. The district court's factual findings are binding in this interlocutory appeal. The following discussion, therefore, summarizes the most pertinent facts from the district court's August 14, 2015 Order.  Order at 1-62; App. 9432-9493.

### Background

This case arose out of the 2001 murder of Kent Heitholt ("Heitholt"), a sports editor for the Columbia Daily Tribune ("Tribune").  Order at 1; App. 9432. In 2004, Appellee Ryan Ferguson ("Ferguson") was convicted of the murder and sentenced to forty years in prison.  *Id.*  Nine years later, the Missouri Court of Appeals vacated his sentence.  *Id.*  Subsequently, Ferguson filed this lawsuit alleging that Defendant Officers John Short ("Short"), Jeff Nichols ("Nichols"), Jeff Westbrook ("Westbrook"), Bryan Liebhart ("Liebhart"), Latisha Stroer ("Stroer"), and Lloyd Simons ("Simons") (collectively "Defendants") violated his constitutional rights in investigating and prosecuting him for the Heitholt murder.  Order at 1-2; App. 9432-9433.

5

**Defendants' Investigation Beginning March 10, 2004:**

**Charles Erickson Interviews**

At 9:00 a.m. on March 10, 2004, Officer Bryan Piester picked up Charles Erickson ("Erickson") from the Moberly Area Community College in Columbia, Missouri, and transported him to the Columbia Police Department. Order at 10; App. 9441. Short interviewed Erickson twice on March 10; the first interview was not recorded, but the second was. *Id.* The initial interview began at approximately 9:22 a.m. and lasted for approximately thirty to forty-five minutes. *Id.* The second interview lasted from approximately 10:05 a.m. to 10:57 a.m. *Id.*

Short's report of the initial Erickson interview stated that Short learned the following information from Erickson. *Id.* On October 31, 2001, Ferguson and Erickson were at the By George nightclub. *Id.* The two had continually borrowed money from Ferguson's sister, but at some point she refused to provide them with more money. Order at 10-11; App. 9441-9442. Erickson and Ferguson left the By George to "rouse someone up for some money." Order at 11; App. 9442. Ferguson retrieved a tire tool from the trunk of his car, and as he and Erickson were walking up to the parking lot of the Tribune, Ferguson asked Erickson to hit Heitholt with something. *Id.* Erickson hit Heitholt in the head with the tire tool and Heitholt screamed. *Id.* Erickson noted that he may have vomited at the scene. *Id.* Ferguson went to make sure that Heitholt was dead, and Erickson saw

6

Ferguson strangle Heitholt. *Id.* Erickson saw a cleaning lady at the back door of the Tribune and told her to get help. *Id.* The cleaning lady ran back into the building. *Id.* Erickson saw Ferguson take something from Heitholt's car. *Id.* As Erickson and Ferguson were leaving the Tribune, Erickson ran into Dallas Mallory and told him that they had "beat down a guy." *Id.* According to the report, when Erickson brought up the incident later, Ferguson told Erickson that he wanted to kill someone before he turned 60 anyway. *Id.* The report also noted that when Erickson tried to talk to Ferguson about the murder at a New Year's Eve party a couple of years later, Ferguson told Erickson that if he ever told anyone about the murder, Ferguson would kill him. *Id.* At various points throughout the report, Short noted that he did not think Erickson was being totally forthcoming and that Erickson did not remember certain facts including whether he or Ferguson hit Heitholt, and whether he vomited at the scene. *Id.*

During the second interview, which was recorded, Erickson stated that he hit Heitholt in the head with a tire tool and that Heitholt did not go down immediately, but staggered. *Id.* Either Erickson or Ferguson threw Heitholt down and Ferguson choked Heitholt to make sure he was dead. Order at 11-12; App. 9442-9443. Erickson described the tire tool as being round, dark steel blue. Order at 12; App. 9443. During the interview, Erickson indicated that he was unsure what was used

7

to strangle Heitholt and Short mentioned the belt. *Id.* Short also asked Erickson about the location of Heitholt's keys. *Id.*

At approximately 3:30 p.m. on March 10, Defendant Nichols, Defendant Stroer, and Detective Giger drove Erickson around downtown Columbia in an unmarked police car to attempt to help Erickson remember the route he and Ferguson took away from the Tribune the night of the murder. *Id.* The drive around lasted until approximately 3:57 p.m. *Id.* During the drive around, Erickson relayed that the By George nightclub was packed the night of the murder. Erickson told Mallory that it was Ferguson's idea to rob someone, but it was Erickson who "pinned him." *Id.* Erickson remembered saying something to the cleaning woman, but the route he and Ferguson took after the murder was foggy to him. *Id.* Throughout the drive around, Erickson continued to make statements about how he was not sure what had happened and did not recall a lot of that evening. *Id.*

Later on March 10, Sergeant Monticelli asked Defendant Nichols to conduct another interview with Erickson. *Id.* Nichols interviewed Erickson from approximately 5:01 until 5:23 p.m. *Id.* During this interview, Erickson drew a picture of the tire tool he said was used to murder Heitholt. Order at 12-13; App. 9443-9444. Nichols told Erickson during the interview that it is "you that is on this chopping block." Order at 13; App. 9444.

8

## Ryan Ferguson Interviews

At approximately 11:00 a.m. on March 10, Defendant Liebhart contacted the Kansas City, Missouri Police Department and requested that they attempt to locate Ferguson. *Id.* Ferguson was located and taken to the Kansas City Missouri Police Department. *Id.* Defendant Short and Defendant Liebhart traveled to the Kansas City Missouri Police Department to interview Ferguson. *Id.* During the interview with Ferguson, the officers learned that Ferguson knew Heitholt had been murdered on Halloween night, 2001, and that three or four weeks before being picked up, Ferguson had discussed the murder with Erickson; Erickson told Ferguson while at a party that he was having dreams about killing Heitholt. *Id.* Ferguson told the officers that on Halloween 2001, he stayed at By George nightclub the entire night. *Id.* He stated that after the bar closed, he and Erickson stayed in the lot for ten to fifteen minutes and talked with his sister, Kelly Ferguson. *Id.* Ferguson said that he had $30 left after the bar closed and did not borrow any money from his sister that night. *Id.* He stated that after he and Erickson left By George that night, he drove Erickson home. Order at 13-14; App. 9444-9445. Ferguson consistently denied any involvement in the murder. Order at 14; App. 9445.

Ferguson was transported to the Columbia Police Department. *Id.* During the ride, Ferguson said that he had money the night of the murder and had not

9

committed any crime. *Id.* When they arrived at the Columbia Police Department, Ferguson was again interviewed. *Id.* Ferguson said that on New Year's Eve of that year, Erickson told Ferguson that he believed Ferguson had killed Heitholt. *Id.* Ferguson claimed that he "did not think twice" about the conversation he had with Erickson and "was having a good time." *Id.*

On April 30, 2004, a grand jury indicted Ferguson with murder in the first degree and robbery in the first degree. *Id.*

**Dallas Mallory Interviews**

During one of the initial interviews with Erickson, Erickson mentioned seeing Dallas Mallory ("Mallory") after murdering Heitholt. *Id.* Around 10:00 a.m. on March 10, Detective Harmon found Mallory and requested that Mallory accompany him to the Columbia Police Department. *Id.* Mallory agreed to be interviewed and told Harmon that he did not know Erickson's name but recognized his face. *Id.* He denied seeing Erickson on Halloween night 2001. *Id.* Mallory consented to take a truth verification exam. *Id.* The examination revealed that Mallory was being deceptive. *Id.* Two different copies of Columbia Police Department Report 243 exist, which contain different information about what Mallory relayed to the officers during this initial interview. Order at 14-15; App. 9445-9446.

10

One of the copies of the report, which Ferguson argues was fabricated, notes that "MALLORY said ERICKSON told him he had 'beat someone down.'" Order at 15; App. 9446. The other copy of the report only includes paragraphs stating that Mallory could not remember if he had seen Erickson and Ferguson on the night of the murder. *Id.* After the interview that resulted in the conflicting reports, officers conducted two follow up interviews with Mallory. *Id.* Mallory has since provided additional information about purported coercion utilized by the officers while interviewing him. *Id.*

**Meghan Arthur Interviews**

On March 11, Defendant Stroer interviewed Meghan Arthur ("Arthur") about what she knew about the Heitholt murder. *Id.* Stroer's report stated that Arthur spoke about a disturbing conversation she had with Ferguson on October 31, 2003. *Id.* According to the report, Ferguson was drunk and high on narcotics and told her that Erickson was trying to get Ferguson to turn himself in for the Heitholt murder. *Id.* Ferguson said that he and Erickson had done something stupid, but Ferguson did not want to turn himself in. *Id.* The report stated that Ferguson said to Arthur that he did not know what happened because he and Erickson had left the scene and did not know how it had ended. *Id.*

In a 2015 deposition, Arthur stated that this report contained "a lot of speculation and things that I just didn't say." *Id.* She denied saying that she had a

"disturbing" conversation with Ferguson, that Ferguson was really drunk, that she believed Ferguson was high on drugs or uppity and jittery, that Ferguson was upset, and that Ferguson told her that Erickson was trying to get him to turn himself in.  Order at 15-16; App. 9446-9447.

### Erickson Proffer and Guilty Plea

On October 1, 2004, Short and Liebhart received a proffer statement from Charles Erickson.  Order at 17; App. 9448.  Erickson was asked to review the events that occurred the night of the Heitholt murder and testified that after leaving the By George that night, he and Ferguson were out of money and Ferguson said that they were going to have to "rob someone."  Order at 17-18; App. 9448-9449. Ferguson removed a tire tool from his car to assist them with the robbery, and began walking downtown in an eastern direction from First Street and Ash.  Order at 18; App. 9449.  After crossing Providence Road, the pair saw a man in the parking lot of the Tribune, so they hid behind dumpsters as they watched the man. *Id.*  Erickson ran toward the man and hit him with a tire tool.  *Id.*   He did not know if he hit the man more than once.  *Id.*  When the man went to the ground, Erickson stopped hitting him and went and sat on the wall directly across from where the man was.  *Id.*  When he looked up, he saw the man face down on the concrete with Ferguson on top of him.  *Id.*   Ferguson was strangling the man with a belt.  *Id.* Some people came out the back door of the Tribune and said something, but

12

Erickson could not remember what was said. *Id.* Erickson told the people to go get help because someone was hurt. *Id.* Erickson stated that either he or Ferguson touched the man's cell phone as it was on the concrete in the drive and took the victim's keys. *Id.* Erickson took the belt and the man's wrist watch from the scene. *Id.* They also took the man's keys and the tire tool and ran from the scene in the opposite direction from which they had come. *Id.* After running away, they ran into Mallory and described the crime to him. *Id.* When they reached Ferguson's car, Ferguson placed the things they had taken from the man in a plastic bag and the two returned to By George. *Id.* After making his initial statement, Erickson answered a variety of questions posed to him by the officers. *Id.*

On November 4, 2004, Erickson and Judge Kevin Crane ("Crane") signed an agreement with Erickson stating that he would testify truthfully at Ferguson's trial in exchange for the state recommending sentences of 15 years for Count I (Murder in the Second Degree), 15 years for Count II (Robbery in the First Degree), to be served concurrently with Count I, and 10 years for Count III (Armed Criminal Action), to be served consecutively with Counts I and II. Order at 19; App. 9450. That same day, Erickson pleaded guilty to all three counts. *Id.* Erickson testified that no one had threatened or coerced him in any manner in order to get him to plead guilty against his will. *Id.*

13

### Investigation by Ferguson Defense Team

After Ferguson retained defense counsel, his attorneys sought out many of the witnesses originally interviewed by Defendants. *Id.* Many of the witnesses described problems with the investigation originally undertaken by the Columbia Police Department. *Id.*

### Interview of Meghan Arthur

On October 13, 2004, Arthur was interviewed by Jim Miller ("Miller"), an investigator for Ferguson's attorney, and Arthur relayed to him that in October 2003, she had been at a party with Ferguson and overheard Ferguson talking about something that Erickson had told Ferguson. *Id.* She said that Ferguson was "distressed about whatever they were talking about like the confusion or whatever it was that they were talking about." Order at 19-20; App. 9450-9451.

Arthur next pointed out to Miller the inaccuracies she saw in Report 252, the report generated about her initial interview by Stroer, which included her changing a note that Ferguson was "really drunk" to simply read "drunk"; noting that contrary to the report, she did not believe Ferguson had taken cocaine the night she overheard the conversation at the party; she did not believe Ferguson had been "uppity and jittery" the night of the conversation; she believed Stroer took what Arthur said about how Ferguson sometimes acted, and transferred it into the report; and Arthur speculated that Ferguson and Erickson may have been talking about

14

drugs the night she overheard the conversation. Order at 20; App. 9451. She finally noted that she felt that the report was "dramatized," and that she was not really sure about exactly what happened that night, while the report made it seem like she was sure. *Id.*

### Interview of Dallas Mallory

Miller interviewed Mallory on December 1, 2004, and Mallory provided him a typed affidavit stating that he had been coerced into providing his original statement. *Id.* According to the affidavit, Mallory told the police officers on March 10, 2004 that he had not seen Erickson or Ferguson in downtown Columbia on the night of the Heitholt murder. *Id.* Police officers began yelling at Mallory, called him a liar, and threatened to charge him with murder. *Id.* Mallory became very scared and emotional as the officers continued yelling. *Id.* Mallory stated that he never told the police that Erickson was being "fidgety and pushing" or saying "something about a fight" or "we beat someone down." Order at 20-21; App. 9451-9452. Mallory's affidavit stated that he did not remember seeing Erickson or Ferguson in downtown Columbia on October 31 or November 1, 2001, or remember Erickson telling Mallory the information contained in the police report regarding his initial interview. Order at 21; App. 9452. In July 2008, testimony was taken in connection with Ferguson's motion for postconviction

15

relief.  *Id.*  Mallory testified that he told the police officers "what they wanted to hear" in March 2004.  *Id.*

### Interview of Michael Boyd ("Boyd")

Miller interviewed Boyd on February 18, 2005.  Order at 22; App. 9453. Miller's notes from the interview contain no mention that Boyd saw two young, white guys standing near the dumpsters of the Tribune building.  *Id.*  However, a report from July 25, 2005, when Boyd was interviewed for the State by Haws, noted that Boyd told Haws that as he was driving away from the Tribune and passed the wall where the dumpsters were located, he saw two young white guys. *Id.*  Boyd has given inconsistent statements about the color of the car he was driving on the night of the murder.  *Id.*

### Criminal Trial of Ferguson

Ferguson's criminal trial began on October 14, 2005.  *Id.*  At trial, Erickson testified consistently with his proffer and guilty plea that he and Ferguson murdered Kent Heitholt.  *Id.*  Erickson also testified about how he had started to remember his involvement with the murder in 2004.  *Id.*  He explained that when a local newspaper ran a story regarding the murder on the second anniversary of the incident, he started to think about that night and slowly remembered bits and pieces about what had occurred.  *Id.*  Following this article, he began to talk with his friends about his regrets and approached Ferguson about their involvement in

16

the murder. *Id.* Erickson acknowledged during his testimony that there were some things about the murder he did not remember at the time he was interviewed by the Columbia Police Department, that he did remember after the interviews were over. Order at 22-23; App. 9453-9454. He also stated that while he was in jail, he received "discovery" from his attorney which included police reports. Order at 23; App. 9454. According to Erickson during Ferguson's trial, he "didn't dream anything," and was certain that he and Ferguson were responsible for the murder. *Id.*

Meghan Arthur and Dallas Mallory were not called to testify at Ferguson's trial. *Id.* On October 21, 2005, the jury found Ferguson guilty of murder in the second degree and robbery in the first degree. *Id.* He was sentenced to thirty years imprisonment for the murder charge and ten years imprisonment for the robbery charge. *Id.*

### Post-Conviction Relief

On February 14, 2011, Ferguson initiated a state habeas corpus proceeding by filing a Rule 91 petition. *Id.* Arthur's deposition was taken in conjunction with that suit, and after reviewing the report of Stroer's interview with her she testified that "I have to say if it's in this report, that it's accurate. *Id.* My memory now is just not that clear." *Id.* She stated that she believed she would have told Stroer the words contained in the report, and that she told Stroer that Ferguson told her that

17

Erickson was trying to get them to turn themselves in. *Id.* She also noted that during the interview, Stroer was not putting words in her mouth and did not ask leading questions. *Id.*

In addition to Arthur, Erickson, Boyd, and Kim Bennett ("Bennett") were called to testify at the habeas proceeding. *Id.* Erickson stated that he had no memory of October 31, 2001 after being at the By George bar and that his trial testimony was a lie. Order at 23-24; App. 9454-9455.

Boyd testified that he was driving a red car the night of the murder and that as he was leaving the parking lot of the Tribune building, he saw two people walking in an alley. Order at 24; App. 9455. Bennett testified that she saw Ferguson and Erickson get in a car and drive off from By George around 1:30 a.m. *Id.*

On January 30, 2013, Ferguson filed a writ of habeas corpus in the Missouri Court of Appeals, Western District. *Id.* Ferguson argued that habeas corpus was necessitated by 1) the recantations of Jerry Trump and Erickson; 2) the prosecution's decision to use testimony it knew or should have known was false; 3) the prosecution withholding exculpatory and impeachment evidence; and 4) the Lincoln County opt out procedure which allowed otherwise qualified jurors to pay a fee and perform community service in lieu of jury duty. *Id.* On November 5, 2013, the Court of Appeals granted Ferguson's request for habeas corpus,

18

concluding that "Ferguson has established the gateway of cause and prejudice, permitting review of his procedurally defaulted claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding material, favorable evidence of an interview with Barbara Trump, the wife of Jerry Trump, one of the State's key witnesses at trial." *Id.* Beyond this *Brady* violation, the court did not address the merits of Ferguson's claims. *Id.*

### Subsequent Testimony Related to this Action

### Dallas Mallory Testimony

Mallory's deposition was taken again on March 30, 2015. Order at 25; App. 9456. He testified that he did not see Erickson or Ferguson on November 1, 2001 near the scene of the murder. *Id.* He testified that on the night of the murder he may have consumed marijuana, one fifth of Captain Morgan and beer. *Id.* He stated that his memory was enhanced when he drank. *Id.* He testified that the Columbia Police Report documenting his March 2004 interview was fabricated, as was his January 4, 2005 interview with Crane and White. *Id.*

### Meghan Arthur Testimony

Arthur's deposition was taken on April 16, 2015. *Id.* She testified that there were various inaccuracies in Report 252, but noted that her memory was not definitive enough to say what she had actually witnessed and overheard on the night of October 31, 2003, so she would refer to her previous statements. *Id.* She

stated that she did not tell Stroer that Ferguson told her that he and Erickson had done something stupid. *Id.* She also stated that she did not tell Stroer that Ferguson told her that Erickson was trying to pull him into the murder and that he did not want to turn himself in. *Id.* On cross examination, Arthur agreed that her memory was clearer on April 16, 2015, than it had been when she gave her original deposition. *Id.*

**Charles Erickson Testimony**

During Erickson's deposition on May 1, 2015, he testified that his statement that he was the sole perpetrator of Heitholt's murder was a lie "to help Ryan get out of prison." *Id.* He testified that he prepared and signed an affidavit in August 2011, which stated that after his arrest he was given discovery which included statements by Mallory, Trump, and Arthur. Order at 25-26; App. 9456-9457. He claims that his decision to plead guilty to the murder was influenced by these statements. Order at 26; App. 9457.

20

## SUMMARY OF THE ARGUMENT

Defendants argued to the district court that Ferguson could not challenge Erickson's guilty plea. They further argued that even if Ferguson could do so, the evidence did not establish that Erickson's confession was coerced. With their arguments, Defendants failed to understand Ferguson's claims and were denied summary judgment. Defendants should not now be permitted to change their arguments and argue that they are protected by qualified and official immunity. They have waived those challenges.

Further, interlocutory appeals of qualified immunity rulings serve the limited purpose of correcting errors of law, and appellate jurisdiction is similarly limited. To avail themselves of that jurisdiction, Defendants were supposed to present this Court only pure issues of law. That standard requires them to accept all the facts as the district court found them to be and then argue why the law would entitle them to qualified immunity based on that set of facts. However, Defendants have crafted their qualified immunity arguments using facts that the district court resolved against them, and, at points, even asserting new facts never advanced below. Thus, properly viewed, Defendants' qualified immunity arguments involve sub rosa factual challenges over which there is no jurisdiction.

By relying on discredited facts, Defendants essentially concede that the factual disputes in the record are material to the legal issues they are raising, and

21

thus, that their appeal does not present pure issues of law. For that reason, this Court should decline to exercise interlocutory jurisdiction over their appeal. The only alternative is for the Court to attempt to distill pure legal arguments from the misconstrued facts, to the extent that they can be, and then apply those arguments to the facts as the district court found them to be.

Should the Court choose to engage in that exercise, it will see that Defendants cannot possibly be immune on these facts.

## ARGUMENT

### I. DEFENDANTS HAVE WAIVED THE QUALIFIED IMMUNITY ARGUMENTS THEY NOW SEEK TO RAISE.

It is a general rule that a federal appellate court does not consider an issue not passed upon below. *See Singleton v. Wulff,* 428 U.S. 106, 120 (1976). If after an examination of the record there is no indication an issue has been raised by the district court, then the appellate court should decline to consider the issue. *Moad v. Ark. State Police Dep't,* 111 F.3d 585, 587 (8th Cir. 1997). A ruling at the summary judgment stage should not be reversed on the basis of an argument not presented below. *Smith v. City of Des Moines, Iowa,* 99 F.3d 1466, 1473 (8th Cir. 1996). A party may not assert new arguments on appeal of a motion for summary judgment. *O.R.S. Distilling Co. v. Brown–Forman Corp.,* 972 F.2d 924, 926 (8th Cir. 1992).

22

Defendants have waived any qualified immunity argument before this Court, on the issues of Ferguson's fabrication, reckless investigation, and conspiracy claims. In their summary judgment motion, Defendants restricted their arguments to whether Ferguson's claims were procedurally barred and whether Erickson's confession and plea were coerced. Defendants' Reply Suggestions in Support of their Motion For Summary Judgment do not make any reference to qualified immunity or clearly established rights. App. 8820-9094. The district court, in rejecting Defendants' contention that Ferguson's claims were based upon whether Erickson's guilty plea was coerced, stated, "These arguments fundamentally misunderstand the premise of Ferguson's claim. Ferguson has not asserted that Erickson's guilty plea should be invalidated or that his confession or guilty plea was coerced." Order at 37; App. 9468.

Because Defendants' arguments before the district court were strictly confined to whether Ferguson had standing, procedural doctrines and whether Erickson's confession and guilty plea were coerced, they have waived the qualified immunity arguments they now seek to present. That their prior motion was limited is shown by the following quotations from Defendants' motion for summary judgment:

- "To the extent that any statement made by Detective Short or Detective Nichols can be construed to be a promise of leniency, the Detectives are entitled to qualified immunity." App. 298.

23

- "Even if Detective Nichols' statement could be considered a threat (which Defendants deny) there is no clearly established precedent in the Eighth Circuit that a vague non-specific reference to 'this chopping block' was enough to cause a constitutional violation." App. 299.

- "...to the extent that that there is a requirement that Detectives affirmatively ask suspects if they are intoxicated or rely on some other procedure other than their training and experience, this requirement was not clearly established as of March 10, 2004, and thus, Detective Short and Detective Nichols are entitled to qualified immunity on this allegation." App. 295.

- "...any requirement that the Detectives affirmatively conduct an investigation regarding Mr. Erickson's mental health without prior notice was not clearly established on March 10, 2004." App. 296.

The other issues raised by Defendant Officers were not based upon qualified immunity. They were based on standing, *Heck v. Humphrey*, 512 U.S. 447 (1994), the Rooker-Feldman doctrine, collateral estoppel and *res judicata*. App. 9468. The district court rejected those claims. App. 9469-9471.

Finally, as to Defendants' claim that they were not liable for their reckless investigation, they presented the identical argument rejected by the district court that they had raised as to their fabrication of evidence. Defendants made only the following reference to qualified immunity in that section:

- "Viewing the evidence in the light most favorable to Ferguson, the investigation conducted in this matter was neither reckless nor conscience-shocking. It was not clearly established law that relying on the valid confession of a co-defendant implicating Ferguson in the murder in conducting the investigation was in violation of Ferguson's substantive due process rights. Therefore, Defendant Officers are entitled to qualified immunity on this claim." App. 331-332.

Appellate Case: 15-2857     Page: 33     Date Filed: 03/22/2016 Entry ID: 4380398

Once again, Defendants claimed they were not liable for their reckless investigation because they were entitled to rely on Erickson's allegedly valid confession. App. 331-332. Thus, the only argument potentially preserved in this appeal is Defendants' claim that it was not clearly established law that relying on the valid confession of a co-defendant implicating Ferguson in the murder in conducting the investigation was in violation of Ferguson's substantive due process rights. This argument can be quickly disposed of because Defendants have mischaracterized Ferguson's claim.

Defendants should not be rewarded for ignoring Ferguson's actual claims by allowing them to proceed on issues that they have waived. Their appeal should be dismissed.

## II. BECAUSE DEFENDANTS BASE THEIR QUALIFIED IMMUNITY ARGUMENTS ON "FACTS" THAT THE DISTRICT COURT REJECTED DURING SUMMARY JUDGMENT, THERE IS NO JURISDICTION OVER THEIR APPEAL.

A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial; the appealable issue is the purely legal one. *Johnson v. Jones,* 515 U.S. 304, 319–20, (1995). This court does not have jurisdiction to consider an interlocutory summary judgment qualified-immunity appeal if "at the heart of th[e] argument is a dispute

25

of fact." *Pace v. City of Des Moines,* 201 F.3d 1050, 1053 (8th Cir. 2000). Even if a defendant frames an issue in terms of qualified immunity, the court should determine whether he is simply arguing that the plaintiff offered insufficient evidence to create a material issue of fact. *Thomas v. Talley,* 251 F.3d 743, 747 (8th Cir. 2001). Typically, the appealable issue is whether the federal right allegedly infringed upon was "clearly established." *Id.* at 746–47.

Defendants, however, create a cumbersome task for the Court because their legal arguments are based on facts the district court rejected. The following are by way of example (and not a complete distillation of the problem):

(1) In arguing that the fabricated evidence did not cause harm to Ferguson, Defendants claim that "Ferguson has not alleged or shown that Defendants misled Judge Crane." (App. Br. at 51). They add that "Judge Crane's affidavit states that he decided to prosecute Ferguson for the murder of Kent Heitholt based on his review of the information provided by the Columbia Police Department, which included the videotaped interviews of Erickson." (App. Br. at 51). To the contrary, the district court found that "factual disputes exist as to whether Defendants intentionally manufactured false evidence that was a component of what Judge Crane reviewed in initiating the prosecution." Order at 58; App. 9489.

(2)    Defendants also argue that "no reasonable jury would find that the allegedly fabricated police reports were the proximate cause of Ferguson's alleged deprivation."  (App. Br. at 55).  However, the district court found that "Whether Erickson would have acted differently had he been presented with [the non-fabricated Mallory report instead of the fabricated Mallory report] is a question of fact for the jury.  Order at 45; App. 9476.

(3)    Defendants argue that "assuming that Arthur's report was partially fabricated ... the alleged fabrication added no value to the case and did not rise to the level of a constitutional violation."  (App. Br. at 62).  To the contrary, the district court found that the fabrication "could have affected Erickson's conduct in pleading guilty and testifying against Ferguson."  Order at 51; App. 9482. Erickson testified that he prepared and signed an affidavit in August 2011 which stated that after his arrest he was given discovery which included statements by Mallory and Arthur.  Order at 25; App. 9457.   He explained that his decision to plead guilty to the murder was influenced by these statements.  *Id.*

(4)    Defendants argue that probable cause existed for the prosecution (App. Br. at 87-90).  The district court found otherwise, explaining that "there is a factual dispute as to whether evidence used to constitute probable cause for his arrest was fabricated."  Order at 61; App. 9492.

27

These are just a few examples of Defendants' attempt to improperly present factual challenges in this appeal. Their attempt should fail.

The district court resolved each of the above (and many other) complicated disputes in a voluminous factual record. Evaluating and applying the correct standard on summary judgment, the district court rejected the facts that Defendants now ask this Court to adopt. There is no jurisdiction to review those findings under the guise of a qualified immunity argument. *See*, *Johnson*, 515 U.S. at 316-17. (holding that jurisdiction in an interlocutory appeal is limited to pure issues of law and identifying the sound policy reasons for this limitation); *Thomas*, 251 F.3d at 746-47 ("Although Captain Talley seeks to frame the issues that he raises on appeal in terms of qualified immunity, he is simply arguing that the district court erred in concluding that Mr. Thomas offered sufficient evidence to create a material issue of fact with respect to whether Captain Talley engaged in intentional discrimination. We have no jurisdiction over this question"); *Pace*, 201 F.3d at 1053 ("[T] the heart of this argument is a dispute of fact - whether or not Mr. Pace consented to the search. The argument does not, therefore, present a 'purely legal issue,' and may not be considered by us on interlocutory appeal.").[1]

---

[1] That is also a fair limitation. Both sides' arguments in this interlocutory appeal are restricted by the district court's resolutions of the factual disputes. Defendants must await final judgment before making the types of arguments they attempt here, and so must Ferguson.

Appellate Case: 15-2857   Page: 37   Date Filed: 03/22/2016 Entry ID: 4380398

That Defendants resort to the rejected facts demonstrates that the underlying factual disputes are material to their legal claims and thus that they do not meet the pure question of law requirement. Thus, the Court should dismiss for lack of jurisdiction. That is certainly a logical approach to the problem of Defendants' reliance on the rejected facts and one this Court has used in the past. *E.g., Thomas*, 251 F.3d at 747 (rejecting attempt to frame factual dispute as a qualified immunity argument); *Pace*, 201 F.3d at 1053 ("heart" of qualified immunity argument was a factual dispute).

This approach makes sense. In *Berryman v. Rieger*, 150 F.3d 561 (6th Cir. 1998), the Sixth Circuit espoused this approach and held that the question of jurisdiction on an interlocutory qualified immunity would henceforward be determined categorically, stating "[w]e hold that in order for such an interlocutory appeal based on qualified immunity to lie, the defendant must be prepared to overlook any factual dispute and concede an interpretation of the facts in the light most favorable to the plaintiff's case." *Id.* at 562. The court explained the policy reasons for its decision as follows:

> We have learned by experience that defendants sometimes attempt simply to protract the litigation and manipulate the fact-law distinction drawn by *Mitchell*, *Johnson*, and *Behrens* to create the appearance of jurisdiction. Only by testing that presentation with the fully fleshed arguments of an adversary and our skeptical questioning of counsel can we divide the legal from the factual. Given the difficult inquiry . . . in all but the clearest circumstances, normally the safest course would be for the parties to address

29

the jurisdictional issues along with the merits in their briefs and for this Court to postpone a final decision on jurisdiction until the case is argued. In the future, a defendant who wished to file such an appeal after being denied qualified immunity should be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the case. Such a defendant will have solid jurisdictional position if the defendant claims the plaintiff cannot show a violation of clearly established law even assuming everything alleged is true. Once a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial. That is exactly what happened in this case. Because the defendants' appeal attempts to persuade us to believe their version of facts, we must dismiss the appeal. Where it clearly appears, as here, that the defendant is unnecessarily protracting the litigation, the court should consider imposing double costs and attorney's fees as a deterrent.

*Id.* at 564-65.[2]

Dismissing for lack of jurisdiction is also fair. Otherwise, an appellee must run the risk of failing to correctly perceive and distill the purely legal issues from that Defendants' impermissible factual charges. Thus, Defendants' appeal should be dismissed.

---

[2] The doctrine of waiver provides for the same result. Defendants have failed to set forth arguments in their brief as to why qualified immunity would apply based on the facts as the district court found them to be. Having foregone that opportunity, they have waived any such argument. Because those are the only arguments for which the Court could have jurisdiction, Defendants' appeal must be dismissed.

30

### III. FERGUSON'S CLAIMS ARE NOT AN IMPROPER ATTEMPT TO CHALLENGE ERICKSON'S CONVICTION.

Defendants argue that Ferguson lacks standing and his claims are barred by: *Heck v. Humphrey*, 512 U.S. 447 (1994), the Rooker-Feldman doctrine and the doctrines of collateral estoppel and *res judicata*. None of these arguments have merit.

Ferguson is not asserting the rights of third party Erickson. Throughout their brief on appeal, Defendants argue that Ferguson seeks to invalidate Erickson's guilty plea or conviction. Ferguson is not seeking to do that. Rather, Ferguson has presented more than sufficient evidence to establish that improper evidence was used to convict him in state court. Among other violations, Defendants fabricated evidence of Ferguson's guilt through Erickson, causing Ferguson's prosecution, conviction and incarceration. As the district court concluded "[Defendants'] arguments fundamentally misunderstand the premise of Ferguson's claim. Ferguson has not asserted that Erickson's guilty plea should be invalidated or that his confession or guilty plea was coerced. Instead, Ferguson contends that the Defendants fabricated evidence through Erickson, which was then used at trial against Ferguson and caused him harm. None of these assertions bear on the validity of Erickson's guilty plea, which Erickson has never attempted to withdraw." Order at 37; App. 9468.

31

Absent Defendants' inaccurate and false characterization of Ferguson's claims, Defendants' arguments can be disposed of summarily. One criminal defendant's decision to plead guilty cannot preclude alleged co-conspirators from asserting shortcomings with the evidence existing at the time of the plea in their own defense. Order at 38; App. 9469. (*citing C.f. Heck*, 512 U.S. at 486-87. Ferguson was not a party to Erickson's conviction, thus his success here would not necessarily imply anything about Erickson's guilty plea, therefore *Heck* does not bar his claims. *See, Hayward v. Cleveland Clinic Found.* 759 F.3d 601, 616 (6th Cir. 2014) (Defendants actually conceded that *Heck* does not apply to third-party claims).

The Rooker-Feldman doctrine does not bar Ferguson's claims because Ferguson and Erickson were convicted in separate proceedings based on separate evidence and they received separate sentences. The outcome of this case has no bearing whatsoever on Erickson's conviction or guilty plea.

Ferguson is not collaterally estopped from asserting his claims here because the issues in the proceedings are different. Ferguson and Erickson have never been parties to a suit where the issue of whether Defendants fabricated evidence was adjudicated nor was Ferguson a third party beneficiary to the deal struck in return for Erickson's plea. *James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001).

32

Finally, the doctrine of *res judicata* does not apply. Ferguson does not seek to relitigate any issue. There is no identity of "the thing sued for," nor is there any "identity of the cause of action." The parties to the action are not the same. Ferguson's civil rights claims have nothing in common with Erickson's guilty plea proceeding. *See, Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175, 183 (Mo.App. 2002) (quoting *State v. Polley,* 2 S.W.3d 887, 893 (Mo. App.1999)); *Niere v. St. Louis Cnty., Missouri*, 305 F.3d 834, 837 (8th Cir. 2002) (discussing the factors to consider in determining whether *res judicata* applies).

For these reasons, Ferguson's claims are not an improper attempt to challenge Erickson's conviction.

## IV. GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM TO BE FOR THE PURPOSES OF SUMMARY JUDGMENT, DEFENDANTS VIOLATED FERGUSON'S RIGHTS TO SUBSTANTIVE DUE PROCESS BY FABRICATING EVIDENCE THAT WAS USED TO CAUSE HIS DAMAGES.

Relying on *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012), Defendants argue that "Erickson does not have a viable § 1983 claim against Defendants for a coerced or induced guilty plea, regardless of whether his plea was based on allegedly fabricated evidence. Logically, if Erickson does not have a viable § 1983 claim against Defendants, Ferguson cannot have a § 1983 claim against Defendants for allegedly inducing Erickson's guilty plea and Erickson choosing to subsequently testify against Ferguson." (App. Br. at 48). This argument is once

33

again based upon the false assumption that Ferguson seeks to prove Erickson's confession was coerced and his plea involuntary. As the district court noted "whether or not Erickson's confession was coerced, however, is not the issue before this Court." Order at 42; App. 9473. (emphasis added). Even if Erickson's statements were not coerced, Defendants' conduct in manufacturing false evidence of Erickson and Ferguson's guilt in the Heitholt murder, induced Erickson to testify at trial against Ferguson, and this violated Ferguson's rights. *Id.*

*Winslow* does not bar Ferguson's claims, it demonstrates their viability. In *Winslow*, the four plaintiffs that had pled guilty sued the investigators alleging that their pleas were the result of a reckless investigation and the manufacture of false evidence. 696 F.3d at 721. As to those causes of action, the Court found that the evidence allowed the reasonable inference that the investigators "crossed the line from gross negligence to recklessness and that defendants manufactured false evidence to complete their investigation." *Id.* at 732. The Court further found that "Specifically, there is evidence that suggests defendants systematically coached witnesses into providing false testimony that was in line with the narrative of the defendants' theory as to how the murder had been committed." *Id.* at 732. After finding in favor of plaintiffs on those claims, the *Winslow* Court discussed plaintiffs' secondary argument that their guilty pleas were unconstitutionally coerced. The Court granted the defendants' motions for summary judgment on that

34

cause of action. *Id.* at 720-21. Obviously, this second ruling did not preclude the Court's denial of summary judgment on the fabricated evidence and reckless investigation claims. Therefore, it is clear that even if Erickson's guilty plea had been held to be knowing and voluntary, such a result would have no effect on Ferguson's claims, just as the district court determined. Order at 42; App. 9473.

*Winslow* is strikingly similar to the case at bar. One basis for the Court's denial of summary judgment was the fabricated evidence supplied to State witness Dean by the investigators. Dean was initially unsure if he was involved in the murder, but the defendants continued to help him remember that he was involved. *Id.* at 733. Dean was threatened with execution if he did not cooperate. *Id.* Over time, those defendants elicited statements from Dean reflecting that he was indeed involved in the murder. *Id.* Those revelations occurred after defendants fed Dean certain facts and provided him with photos and videos of the crime scene. *Id.* The Court found that this evidence suggested that defendants engaged in weeks of indoctrination, eventually convincing Dean that he was indeed involved and present at the scene of the crime. *Id.* The defendants' conduct as to Dean violated the plaintiffs' rights.

Here, the district court found that a jury question exists as to whether "any fabrication infringed on Ferguson's liberty interest by influencing Erickson's testimony against him." Order at 48; App. 9479 (citing *Winslow*). The district

35

court also cited *Winslow* and correctly found that Ferguson has presented evidence that a jury could determine proved that the Defendants either supplied facts to Erickson about the murder during his interrogations or fed him fabricated evidence to convince induce him to plead guilty and testify against Ferguson.  Order at 56; App. 9487. Defendants' misdirected arguments find no support in *Winslow*.

### A.     The Fabricated Evidence caused Ferguson's Injuries.

#### 1.     Crane did not exercise independent judgment that severed the causal connection between the fabricated evidence and Ferguson's injury.

Defendants argue that Crane exercised independent judgment that somehow broke the chain of causation.  Defendants claim that "Ferguson has not alleged or shown that Defendants misled Crane." (App. Br. at 51).  Citing one affidavit of Crane[3], Defendants argue that Crane was on notice of the deficiencies in Erickson's statement because he reviewed the "video-taped interviews of Erickson." *Id.* Defendants omit that Crane relied upon "information provided to [him] by the Columbia Police Department."  App. 9095.  Ferguson has presented evidence to show that information was false.  For that reason, and contrary to Defendants' assertions, the district court found, "factual disputes exist as to whether [Defendants] intentionally manufactured false evidence that was a component of what Crane reviewed in initiating the prosecution."  Order at 58; App. 9489.  In

---

[3]   Crane signed the affidavit on July 10, 2015, two months after he gave his deposition in this case.

36

this interlocutory appeal, Defendants do not have jurisdiction to seek review of factual disputes.

But due to Defendants' baseless argument, Ferguson herein references the factual disputes that exist. Those disputes include those illustrated by a review of Crane's testimony and subsequent affidavit. While Defendants assert that Crane made the decision to prosecute Ferguson in part on his review of Erickson's videotaped statements[4], this assertion is disputed. One basis for that dispute is that Ferguson has shown the videotaped interviews were not sent to Crane's office until March 12, 2004. App. 9498 at OFFICERS 000905-907. Further, at Crane's 2015 deposition, (taken prior to the affidavit upon which Defendants' rely), Crane testified he was unsure whether he reviewed the videotaped statements. App. 8408-8412. He did not know if he had seen Defendant Nichols' interview of Erickson. App. 8411. Crane also did not know if he had seen the videotape of Defendant Nichols and Defendant Stroer driving Erickson on a tour of the crime scene and surrounding area. App. 8411-8412. Citing this factual dispute, the district court correctly found, Crane "relied on the Probable Cause Statement which set out a brief set of facts from [Defendants'] investigation" but he only "may have also reviewed the videotaped interview of Erickson." Order at 57-58; App. 9488-9489. It should also be noted that the first interview of Erickson was

---

[4]   It must also be noted that the videotaped statements were elicited after Erickson was asked leading questions and fed information in the unrecorded interrogation.

Appellate Case: 15-2857     Page: 46     Date Filed: 03/22/2016 Entry ID: 4380398

not videotaped.  The evidence of record and common sense establish that Crane assumed the police reports and other information provided by Defendants were truthful in deciding to prosecute Ferguson.  App. 8420.  Because Ferguson has presented sufficient evidence that those reports were fabricated and the information was false, Ferguson has met his burden at this stage of the litigation.  *See, Myers v. Morris,* 810 F.2d 1437, 1457 (8th Cir. 1987); *Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979) (dictum); and *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Defendants cannot use Crane's decision to charge and prosecute, because it was based upon fabricated information from them, to escape liability. They were instrumental in Ferguson's continued confinement after they provided Crane with fabricated information.  *See, Jones v. City of Chicago,* 856 F.2d 985, 993-994 (7th Cir. 1988).

Continuing their improper attack on the district court's findings of fact, Defendants write that "Ferguson claims the Mallory report has one fabricated paragraph that was not said by Mallory in that interview or any subsequent interviews."  (App. Br. at 50-51).  Defendants then must concede that "This is supported by Mallory's 2015 testimony (App. 6705) ... and by the fact that there are two versions of the Mallory report (Report 243) (*See* App. 6926 and App. 6964)."  App. Br. at 51. With their concession that Mallory testified that the Defendants fabricated a police report, Defendants have admitted that a factual

38

dispute exists. Defendants have also now conceded that one can reasonably infer they fabricated a police report because they have acknowledged that two versions of the crucial Mallory report exist.

Defendants then argue that Crane "was aware of possible problems with the Mallory report." (App. Br. at 51). Defendants' argument is misdirected, confusing and irrelevant. The point is that neither Erickson nor Crane were informed that Mallory was threatened and they disregard that the report created (App. 6926-6929) was fabricated and false. Only Defendants knew that. Defendants did not advise Crane that they had threatened to have Mallory charged with the murder of Heitholt if he did not identify Erickson as a person he saw near the time of the murder. App. 8431-8432. Defendants did not advise Crane that they told Mallory he needed to say that Erickson told him shortly after the murder that he had just beaten someone down. App. 8432-8433. The false police report attributing those statements to Mallory (App. 6926-6929) contributed to Erickson's decision to plead guilty and testify against Ferguson, causing Ferguson's injuries.

Defendants argue that Crane was aware of "possible problems" with the "Arthur reports prior to trial." (App. Br. at 51). Again, Defendants' argument does not support their position. Ferguson has presented ample evidence that the fabricated Arthur report (App. 9498 at OFFICERS 885-887) was provided to Erickson and the report caused Erickson to believe he and Ferguson were involved

39

in the murder. Because of the report, Erickson pled guilty and testified against Ferguson, causing Ferguson's injuries. Defendants knew the report was false. Crane and Erickson did not.

The causal connection was not broken by any independent decision of Crane because he too was unknowingly relying upon fabricated reports in charging and prosecuting Ferguson. Defendants do not dispute the fact that they never told Crane they had fabricated reports and engaged in other misconduct. Defendants may not point to the conduct of others to excuse their misconduct.

## B. Erickson did not Exercise Independent Judgment after Defendants' Fabrication of Evidence.

In one of their most illogical and convoluted new claims not raised to the district court, Defendants argue that Erickson and his attorney Kempton acted independently to break the causal chain between Defendants' fabrication and Ferguson's injuries. Defendants argue that "by providing Erickson with the police reports, Kempton revealed any fact about the murder allegedly fed to Erickson by Short." (App. Br. at 53). Thereafter, according to Defendants, Erickson gave a "more complete statement about his and Ferguson's involvement in the murder at his proffer and again at trial than he did to [Defendants], indicating that Erickson with (*sic*) either telling the truth or independently decided to enhance his statement." *Id.* Defendants conclude that "any effect of Defendants' alleged fabrication was nullified by Erickson and Kempton's acts." (App. Br. at 54).

40

Defendants' argument is absurd. Apparently, Defendants argue that their fabrication of the police reports should be excused because Kempton provided their fabricated reports to Erickson. Defendants ignore the basic fact that Kempton did not create the fabricated reports. Defendants knew the fabricated reports would be provided to Erickson. Erickson, for his part, reviewed the fabricated reports and became convinced he was involved in the murder. As a result, he adopted Defendants' narrative. Nothing about this sequence of events suggests that Erickson's or Kempton's actions nullified the effect of Defendants' fabrication of evidence.

In any event, Defendants are asking this Court to resolve another factual issue. Defendants continue to argue that Erickson testified against Ferguson because the two of them were involved in the murder. But Ferguson has presented evidence that Erickson testified against him as a result of Defendants' fabrication of evidence. Defendants are asking this court to reward them with the reversal of the district court's denial of summary judgment because Erickson's attorney handed him the fabricated police reports. This argument raises strong questions about the good faith of its author. Surely, Defendants are not asking this Court to rule in their favor because a third party handed their fabricated reports to Erickson for his review. The Defendants knew that their fabricated reports would be provided to Erickson whether it was by his attorney Mr. Kempton or a correctional

41

officer in the mailroom at the county jail who handed Erickson his mail. It is ludicrous to try to shift blame to either Mr. Kempton or the mail room at the county jail for the Defendants' fabrication of the key reports that induced Erickson to plead guilty and testify against Ferguson.

Ferguson has presented abundant evidence to support his position that the fabricated evidence induced Erickson to plead guilty and testify against him. In his recorded interview, Erickson was fed information by way of leading questions that provided key facts previously unknown to him. App. 4292-4300. Later, a false police report, Exhibit WW, (App. 6926-6929) was created and attributed statements to Mallory implicating Erickson and Ferguson in the murder. Exhibit XX (App. 6964-6968), which was never provided to Erickson, did not contain those false statements of Mallory. The district court correctly found, "whether Erickson would have acted differently had he been presented with Exhibit XX rather than Exhibit WW is a question of fact appropriate for the jury." Order at 45; App. 9476. Although, the false Mallory report alone demonstrates that Defendants' fabrication caused Erickson to plead guilty and testify against Ferguson, thereby causing Ferguson's subsequent injuries, Ferguson has presented additional evidence to support his claims. Arthur has testified that statements attributed to her in Defendants' 2004 police report contain "a lot of speculation and things I just didn't say." App. 5643; Order at 49; App. 9480. Defendants admit that report was

42

given to Erickson. The district court concluded "whether the 2004 report was fabricated constitutes a factual dispute which must be addressed at trial." Order at 51; App. 9482. The district court further found that an issue of fact exists as to whether the report affected Erickson's testimony. *Id.*

Finally, Erickson has given his sworn statement demonstrating that his testimony was the result of his review of Defendants' fabrications, including the false Mallory and Arthur police reports. Erickson stated "[s]oon after my arrest I was given my discovery. I was given statements by Dallas Mallory, Jerry Trump and Meghan Arthur. Those statements led me to believe I was guilty." App. 2972; Order at 48; App. 9479. Not only do Erickson's guilty plea and testimony clearly demonstrate that he relied exclusively upon the fabricated evidence in pleading guilty and testify against Ferguson, but there is absolutely no evidence that he acted independently of the fabricated evidence that was provided to him in the Defendants' reports.

Defendants' reference to Erickson giving a "more complete statement" after he reviewed Defendants' fabricated evidence does not support Defendants' claim that Erickson exercised judgment independent of Defendants' fabrication of evidence. Rather, the fact that Erickson knew nothing about the murder when he was first interrogated, then provided a detailed account after multiple sessions with Defendants, including a tour of the crime scene (App. 7211-7220), demonstrates

43

that the Defendants' fabrications caused Ferguson's injuries. *See, White v. Smith*, 696 F.2d 740, 754 (8th Cir. 2012). (finding that through leading questions and hints about basic facts, investigators reconstructed a witness's statement to match the established evidence. Thereafter, the witness's narrative began to match the investigator's theory of the case, showing that the Defendants systematically and intentionally coached witnesses into providing false testimony that fit Defendants' particular narrative of how the crime was committed).

### C. A Reasonable Juror would find that the Fabricated Evidence was the Proximate cause of Ferguson's injuries.

Defendants claim that proximate cause is lacking because "Mallory and Arthur's reports were not introduced at Ferguson's criminal trial and Mallory and Arthur did not testify." (App. Br. at 55). This argument ignores the fact that the false reports, as the district court properly found, were used against Ferguson. Order at 45-46; App. 9476-77; Order at 51; 9482. As Ferguson has repeatedly argued and the district court further found, the issue in this case is whether Defendants' fabrications caused Erickson to testify against Ferguson. Order at 48; App. 9479; Order at 51; App. 9482. Ferguson has presented abundant evidence to support his cause of action.

Defendants make numerous representations in this section that range from misleading to false. They claim "Arthur's report did not contain any incriminating information against Erickson or Ferguson." (App. Br. at 56). This is simply

44

untrue. The false Arthur report states that Ferguson was drunk and high on narcotics when he spoke to Arthur, and that Ferguson told Arthur that "Erickson is trying to get me to turn ourselves in." App. 9498 at OFFICERS 885. The report falsely adds that Ferguson "didn't want to turn himself in ... [and Ferguson] didn't even know what happened because he and Erickson had left." *Id.* Ferguson was "really worked up," and "she didn't know that he might have been talking about the Heitholt murder." *Id.* The report claims Ferguson told another individual about being involved in the Heitholt murder. App. 9498 at OFFICERS 886. According to the report, Arthur related that Ferguson was moving "to start over where no one knew his name." App. 9498 at OFFICERS 886. Obviously, the Stroer report attributes multiple incriminating statements to Ferguson. Defendants' assertion to the contrary is disingenuous.

Defendants also argue that Erickson has testified he pled guilty because he was afraid of being charged with first degree murder. (App. Br. at 56). That may be true and supports Ferguson's position. Erickson was afraid of being charged with first degree murder because Defendants' fabricated evidence that convinced him he was guilty. App. 2972. For the same reason, Erickson testified against Ferguson, causing his injuries.

Defendants also argue that "Erickson's testimony conflicted with Mallory's statement." (App. Br. at 56). It is unclear what Defendants are claiming and how

their claim, whatever it may be, supports their position. In any event, one can very reasonably infer that the false Mallory report (App. 6926-6929) convinced Erickson that Mallory had seen him at the scene of the murder and convinced Erickson that he was guilty of the murder. Moreover, as the district court found, Erickson himself stated the Mallory report convinced him of his guilt. Order at 48; App. 9479. Thus, Ferguson has shown that proximate cause is not lacking.

## D. Defendants' Conduct Violated Ferguson's Due Process Rights.

Defendants' ask that Erickson's affidavit (App. 2957-2976) not be considered because it is inconsistent with other testimony given by Erickson. Defendants' argument fails for multiple reasons. First, Erickson's affidavit is not inconsistent with other testimony he has given. More importantly, even if it was inconsistent, such inconsistency would not be a basis for failing to consider it.

Erickson provided his affidavit several years <u>before</u> he gave his deposition in this case. This fact alone distinguishes *Camfield Tire, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir. 1983) where the affiant attempted to create an issue of fact at the summary judgment stage by submitting an affidavit contradicting his prior deposition testimony. *Id.* Here, because Erickson had already provided his affidavit, Defendants had the full and fair opportunity to question Erickson at length about the affidavit during his deposition. Indeed, Defendants' counsel questioned Erickson about a few excerpts from the affidavit. App. 9554-9556.

46

Ferguson's counsel also presented Erickson with the 2011 affidavit at his deposition in 2015 and Erickson identified it as the true and accurate affidavit he had written. App. 9557-9558. Erickson's affidavit is not inconsistent with "the rest of his testimony" as Defendants claim. App. Br. at 59. Further, C*amfield* in no way suggests that Erickson's affidavit should not be considered.

Defendants cite several cases they claim support their position. (App. Br. at 60). None of the cases support them nor do they suggest the district court ruled incorrectly. For example, in *Wilson v. Lawrence County,* 260 F.3d 946 (8th Cir. 2012), the plaintiff, Wilson, argued that the defendant investigators violated his due process rights by inducing a false inculpatory statement from a third party ("Wall") and using the fabricated evidence against him. *Id.*, at 954-955. Wilson filed his complaint after he pled guilty in the criminal proceedings underlying his civil rights claim. *Id.* at 949. For this reason alone, Defendants' conclusion that *Wilson* is a case that "suggests that a constitutional violation is created only after the fabricated report is introduced at trial and the jury convicts plaintiff" (App. Br. at 61, emphasis added) is incorrect.

In any event, at the summary judgment stage, the defendants argued that Wilson was improperly trying to assert Wall's rights. The Eighth Circuit disagreed, holding that Wilson's due process claim was valid because he was not attempting to assert Wall's rights. Rather, Wilson properly claimed that the

47

investigators knowingly used fabricated evidence from Wall against Wilson at his criminal proceedings. *Id.* at 954-55.

The *Wilson* Court denied the investigators' motion for summary judgment. Ferguson's claim is even stronger. While it is unclear how Wall's statements were used against Wilson due to his guilty plea, it is obvious here that Defendants fabricated evidence and used that fabricated evidence against Ferguson when Erickson testified against Ferguson at his criminal trial. *Wilson* supports Ferguson, not Defendants.

Defendants also cite *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012). As in *Wilson,* Mr. Winslow also pled guilty at his criminal proceedings. Therefore, Defendants' reference to the introduction of a police report at a jury trial as a prerequisite to liability is again confounding and simply wrong. Further, the *Winslow* Court concluded that the defendants fabricated evidence in the form of the co-defendants' false accusations against Mr. Winslow and used that tainted evidence to secure Mr. Winslow's plea. *Id.* at 735. That holding completely supports Ferguson's claim and the district court's decision. Defendants fabricated Erickson's accusations and used that tainted evidence to support Ferguson's conviction.

Next, Defendants cite *White v. Smith*, 696 F.2d 740 (8th Cir. 2012). Defendants admit that in *White*, the fabricated evidence was in the form of the

48

Defendants "allegedly coach[ing] witnesses on multiple occasions to present a certain narrative at trial." (App. Br. at 60). *White* does not support Defendants' claims as that is precisely what happened here. From the first interrogation of Erickson, Defendants coached Erickson to present Defendants' narrative which would ultimately result in Ferguson's conviction and additional injuries. Similarly, Defendants find no support in the additional cases they briefly reference.

In summary, Defendants' proposal that Defendants' liability requires that their fabricated reports be admitted at a jury trial is simply incorrect. As Ferguson has repeatedly explained, and the district court found, Ferguson has presented sufficient evidence to show Defendants knowingly used false and unreliable testimony against Ferguson to cause his damages.

Defendants further argue that Defendants' inclusion of fabricated information in the reports attributing false statements to Arthur was "at most harmless error." (App. Br. at 62). Defendants are once again asking this Court to improperly review a factual issue in their interlocutory appeal. Setting aside whether a harmless error doctrine for fabricated police reports exists, Defendants' classification of the fabricated Arthur report is wrong. First, this Court should not adopt Defendants' mis-interpretation of the report. The impact of the report is to be viewed in the light most favorable to Ferguson. Interpreted correctly, the report attributes fabricated statements to Ferguson as if he had confessed to involvement

49

in the murder. The fact is that Ferguson did not make inculpatory statements to Arthur, Defendants, or anyone. The report falsely connects Ferguson to the murder with Ferguson's own, but fabricated, words. The district court correctly found that the fabricated Arthur report "could have affected Erickson's conduct in pleading guilty and testifying against Ferguson" (Order at 51; App. 9482) and that factual finding should not be disturbed.

Defendants argue that the district court erred in failing to specifically set forth each and every "demonstrably incorrect statement" made by Erickson and now ask this Court to search the voluminous record to determine what facts the district court assumed. (App. Br. at 63). After making this request, Defendants argue at length as to their interpretation of the facts. Defendants' argument should be quickly discarded. The district court expressly stated that it was relying in part on the substance of Detective Short's interview of Erickson, specifying the 44 leading questions asked by Short and Erickson's responses "combined to constitute proof of fabrication of evidence." Order at 44; App. 9475. The district court added:

> The question before the Court is not whether each individual allegation against the [Defendants] can be explained away by the[Defendants], but whether the evidence as a whole could be sufficient for a fact finder to conclude that the [Defendants] engaged in conscious-shocking behavior and deliberately fabricated evidence that was presented to convict Ferguson. Order at 44; App. 9475.

50

The district court was correct and Defendants' pleas to this Court to interpret the evidence in their favor (App. Br. at 63-67) should not be accepted. Defendants can attempt to justify their behavior to the jury, but not at this stage of the litigation. As was the district court, this Court is required to make all reasonable inferences in favor of the non-moving party. *Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012).

Further, at the end of their misplaced argument, Defendants actually admit that sufficient evidence exists to support the district court's conclusion that Erickson made demonstrably false statements to Defendants. Defendants acknowledge that Erickson made the following incorrect statements: 1) Heitholt was face up when he was strangled, 2) Heitholt was strangled with a shirt, 3) Heitholt was only hit once and 4) Vomit would be present at the scene. (App. Br. at 67). The falsity of these facts would have been known immediately to the Defendants. Defendants' admissions in their brief direct that this Court need not engage in the record search Defendants request because they have conceded that a factual basis exists for the district court's conclusion. Confronted with the fact that the record undisputedly establishes that Erickson made demonstrably false statements and that leading questions were asked, Defendants resort to simply and weakly arguing, without support, that the resultant fabrication through Erickson was "not enough as a matter of law to find Ferguson suffered a constitutional

51

violation." (App. Br. at 68). Defendants' not only ask this Court to weigh the evidence, they interpret it incorrectly.

Defendants argue that "no reasonable juror would find that Erickson's will was overborne." (App. Br. at 68). As the district court found, that it is not the issue. Order at 42; App. 9473. The issue here is whether Defendants 'knowingly used false or unreliable evidence' against Ferguson. *Id.*

Throughout their brief, Defendants constantly repeat their argument that this Court should believe their version of the facts. (App. Br. at 69-71). Defendants' argument is misplaced in this interlocutory appeal. They argue that Erickson "never said he witnessed the entire strangulation, <u>so it is plausible</u> that when Erickson witnessed Ferguson strangling Heitholt, Heitholt was on his back and later, Heitholt rolled or was flipped over." (App. Br. at 69), emphasis added. They further argue Heitholt "<u>could have been rolled</u> by the assailants." *Id.,* emphasis added. Defendants claim that because Erickson never "affirmatively said what the strangulation weapon was," the fact that he did not know what weapon was used is excusable. App. Br. at 70. Defendants add that Erickson <u>may have only wanted to admit</u> that he struck Heitholt once and <u>it is possible</u> Ferguson struck Heitholt ten times. *Id.*, emphasis added. To explain the lack of vomit at the scene, Defendants allege that "Erickson was drinking at a bar all night, so the contents of his stomach <u>may have been</u> liquid, and any vomit would not have been

52

observable." (App. Br. at 70-71). This Court is not a jury. Defendants' assertions as to what is plausible, what could have happened, and what may have happened are irrelevant to this interlocutory appeal because this Court's jurisdiction extends only to pure issues of law.

Next, in an argument not raised before the district court, Defendants argue that "all of the alleged fabrication occurred in March, 2004, when the law was that an officer could fabricate a report, but could not use it against a criminal defendant at trial." (App. Br. at 72). Even if this Court addresses this waived argument, the argument ignores the facts that Ferguson has presented more than sufficient evidence to show that the fabricated evidence was used against him to cause his damages. The right to be free from a conviction purposefully obtained by false evidence has long been clearly established. *Mooney v. Holohan,* 294 U.S. 103, 112 (1935).

Defendants conclude their argument seeking to protect their fabrication of evidence with rehashed arguments relating to Erickson and Arthur. As to Erickson, they again ask this Court to interpret facts in their favor. They note that Erickson "was 19 at the time and attending college." (App. Br. at 72). They again argue (incorrectly) that "the allegedly fabricated police reports" were not used against Ferguson. *Id.* They assert that Erickson was "candid" and "very confident in the facts he relayed." (App. Br. at 73). They add that questions posed to

53

Erickson were "not leading." *Id.* Defendants' arguments are obviously a plea to this Court to interpret the facts in their favor, contrary to the law and the district court. Defendants do not cite a single case to even attempt to argue an issue of law. There is simply no jurisdiction for Defendants' argument. Their invitation to this Court to adopt their view of the facts should not be accepted.

As to Arthur, Defendants resort to insulting her and refer to "the disjointed way Arthur gives statements. (App. Br. at 74). Such assertions have no place in this interlocutory appeal. In any event, Arthur made Defendants' fabrication clear in her recent deposition. Defendants ignore that fact when they fail to reference that Arthur testified in 2015 that the statements attributed to her in Defendants' police report contain "a lot of speculation and things that I just didn't say." App. 5643. This district court did not ignore this evidence in its ruling. Order at 49; App. 9480.

In the end, the vast majority of Defendants' arguments should not even be addressed, as Defendants are asking this Court to resolve factual disputes. If Defendants have raised any arguments that have not been waived and over which this Court has jurisdiction, which Ferguson disputes, those arguments lack merit. The district court was correct.

54

## V. GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM TO BE FOR PURPOSES OF SUMMARY JUDGMENT, DEFENDANTS VIOLATED FERGUSON'S RIGHTS TO SUBSTANTIVE DUE PROCESS BY ENGAGING IN A RECKLESS INVESTIGATION AND CAUSING HIS DAMAGES.

Defendants admit that Ferguson's right to be free from a reckless investigation was clearly established prior to the "investigation" in this case. (App. Br. at 75, citing *Wilson,* 260 F.3d 946 (8th Cir. 2001)). Faced with this well settled law, Defendants do not adopt the district court's findings of fact. Rather, Defendants argue at length that the evidence was insufficient to support Ferguson's claim. Therefore, there is no jurisdiction for this Court to review Defendants' fact based argument.

If this Court chooses to review Defendants' argument, Ferguson submits it is without merit. In addition to asking this Court to review factual disputes, Defendants misstate Ferguson's position, misrepresent the record and ignore the district court's well reasoned decision.

Initially, it should be noted that this Court need not ignore Defendants' fabrication of evidence in reviewing Ferguson's reckless investigation claim. A failure to investigate claim may be inextricably bound with a false evidence claim, where the plaintiffs' theory is that investigators recognized deficiencies in a case and manufactured false evidence to fill those gaps. *Cf. Moran v. Clarke,* 296 F.3d 638, 647–48 (8th Cir. 2002) (en banc) (denying qualified immunity where

55

substantive due process claim was based on evidence that investigators "purposely ignored" exculpatory evidence, induced witnesses to incriminate a specific person, and manufactured evidence).

This Court has recognized that an intentionally or recklessly inadequate investigation can violate an accused's liberty interest in "obtaining fair criminal proceedings before being denied one's liberty in the most traditional sense." *Wilson,* 260 F.3d at 956 n. 8 (2001) (emphasis added). To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's "failure to investigate was intentional or reckless, thereby shocking the conscience." *Cooper v. Martin,* 634 F.3d 477, 481 (8th Cir. 2011). The following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Akins v. Epperly,* 588 F.3d 1178, 1184 (8th Cir. 2009). A reckless investigation claim may be supported by proof that investigators exerted "systematic pressure to implicate the defendant in the face of contrary evidence," *Id.*

As the district court found, "If Ferguson succeeds on his fabrication claim, this would certainly constitute some 'evidence of systemic pressure to implicate the

56

defendant in the face of contrary evidence,' citing *Akins,* 588 F.3d at 1184. Order at 5; App. 9486. The district court then found that Ferguson had presented sufficient evidence and denied the motion for summary judgment. *Id.* The same result is required here.

Defendants once again argue that because Erickson's guilty plea has not been overturned, Ferguson cannot bring a reckless investigation cause of action. (App. Br. at 75). Defendants repeat their claim that Erickson's guilty plea was "voluntary and knowing." (App. Br. at 78). These frivolous arguments do not become meritorious simply because Defendants repeat them throughout their brief. The disposition of Erickson's guilty plea does not affect Ferguson's causes of action. In any event, Erickson's ability to challenge his guilty plea expired long ago. As explained in *State* v. *Vogt*, 304 S.W.3d 209 (Mo. App. 2009), a defendant who pleads guilty waives all constitutional claims. *See also, State v. Pendleton*, 910 S.W.2d 268 (Mo. App. 1995) (Missouri state law requires that all motions to withdraw guilty plea must be brought within 90 days after movant is delivered to the custody of the department of corrections, citing Rule 24.305). Consistent with this well established law, Erickson has never sought to withdraw his plea since coming forward and admitting his trial testimony was false.

Here, Ferguson has presented sufficient evidence to allow, if not demand, the reasonable inference that Defendants recklessly investigated the Heitholt

murder and purposefully manufactured false evidence to implicate Ferguson. Ferguson has presented evidence that suggests Defendants systematically coached Mr. Erickson, Mr. Mallory and Ms. Arthur to provide false testimony that was in line with the narrative of the Defendants' theory that Erickson and Ferguson were involved in the murder.

Defendants discuss *Clemmons v. Armontrout*, 477 F.3d 962 (8th Cir. 2007). *Clemmons* involved the stabbing of an inmate by another inmate in the penitentiary. An officer witnessed the stabbing and identified Mr. Clemmons as the perpetrator. With blood on his clothing, Mr. Clemmons was immediately taken into custody. The plaintiff made no allegations that the officer that witnessed the stabbing was not credible. The plaintiff also did not allege that the defendants fabricated any evidence. For those reasons alone, *Clemmons* is inapposite. No non-fabricated evidence here existed similar to the evidence against Mr. Clemmons. Further, the district court found that Ferguson has presented sufficient evidence to establish Defendants fabricated evidence that was used against him. Order at 56; App. 9487.

Defendants also seek support in *Amrine v. Brooks*, 522 F.3d 823 (8th Cir. 2008). (App. Br. at 77-78). In *Amrine*, the Court held that while investigators failed to follow other leads, their conduct did not rise above negligence, since significant evidence uncovered during the investigation pointed to the plaintiff.

58

(App. Br. at 78). Defendants claim that their conduct was similar to the investigators in *Amrine*. In making this claim, Defendants ignore the fact that no evidence suggested Ferguson's guilt. Erickson knew nothing about the murder of Mr. Heitholt that could have been deemed to suggest he or Ferguson had been involved. Defendants fed Erickson information, fabricated police reports, presented those fabricated reports to Erickson, and indoctrinated Erickson. They caused him to plead guilty and give false testimony that caused Ferguson's damages. Nothing like that was even alleged in *Amrine*, thus Defendants find no support in that decision.

Defendants again cite *Winslow* for the proposition that "in investigating a crime, it is unlikely that every witness's account will align perfectly with the testimony of every other witness." (App. Br. at 79). While that may be true, the proposition is irrelevant to the issue before this Court. *Winslow* did not hold that investigators that recklessly investigate and fabricate evidence in an attempt to align their witnesses' testimony with their narrative are protected by qualified immunity.

As they do throughout their brief, Defendants argue the disputed facts at length. They claim that their investigation was not reckless because the lack of Ferguson's fingerprints and DNA at the scene does not guarantee Ferguson was not at the scene. Defendants add that Ferguson and Erickson resembled the composite

59

sketches. Defendants also argue that specific failures in their investigation did not alone violate Ferguson's rights. For example, they argue that due process did not require them to investigate Michael Boyd. They argue that probable cause existed for Ferguson's arrest. In doing so, Defendants again ignore the evidence that Erickson knew nothing about the murder until Defendants fed him information and threatened him.

Defendants ignore what the district court considered. After consideration of the totality of the evidence Ferguson presented, the district court concluded that "Ferguson has presented some evidence which a jury could find to indicate that Defendants undertook a reckless investigation." Order at 55; App. 9486. The district court's conclusion finds strong support in the record. Erickson advised Defendants that he "might not even know what [he was] talking about" (App. 4298) and he was surprised that the murder weapon was a belt when he was told that fact. *Id.* Feeding information to Erickson was apparently not sufficient to their indoctrination so Defendants drove Erickson around in a tour of the crime scene. App. 7211-7220. As a result of Defendants' conduct, Erickson ultimately testified to a story that in no way resembled what he originally told Defendants.

Defendants address this Court as if it is the ultimate finder of fact. Defendants' approach is misdirected. They are free to make their arguments to a jury. But the district court was correct when it held that Ferguson has presented

60

sufficient evidence to support his claims. There can be no question that the evidence was sufficient to establish that Defendants fed Erickson fabricated evidence to convince him to plead guilty and testify against Ferguson. Order at 56; App. 9487. A finder of fact will, Ferguson respectfully submits, reasonably determine that this was a reckless investigation where Defendants induced a vulnerable individual, Erickson, into agreeing that he had a role in the Heitholt murder by presenting fabricated police reports to him so that his accusations fit into Defendants' narrative of events while they ignored evidence contrary, and potentially fatal, to their theory. *See, Winslow* at 696 F.3d 733-34.

Perhaps *White v. Smith*, 696 F.3d 740 (8th Cir. 2012) best illustrates the strength of Ferguson's evidence. The plaintiff in *White* was a co-defendant of the plaintiffs in *Winslow*. But the *White* plaintiff proceeded to his criminal trial as opposed to pleading guilty as the *Winslow* defendants had done. *Id.* at 752. After he was exonerated, the plaintiff sued the investigators for violating his substantive due process rights. *Id.* The defendants argued that they were entitled to summary judgment. *Id.* This Court disagreed. *Id.* at 740.

In denying the defendants' motion, this Court reviewed the investigation and explained that those defendants "first convinced a suspect that he or she was at the scene of the crime through lies, threats, leading questions ... and the alleged accusations of several other witnesses." *Id.* at 755. The Court also concluded that

61

the defendants "repeatedly ignored any evidence that did not fit within their narrative." *Id.* at 756. They "credited statements from questionable sources ... who tended to implicate White and his alleged accomplices, even when their statements contradicted readily verifiable facts." *Id.* That is similar to what happened here, but Defendants' conduct was more egregious. Here, Defendants not only credited questionable courses, they also threatened witnesses, lied about what the witnesses said, and fabricated their reports.

Like Ferguson, the plaintiff in *White* maintained his innocence and went to trial, unlike his co-defendants. The Court found that a finder of fact could reasonably conclude that Mr. White's criminal co-defendants had been "coached by defendants into reciting some semblance of a coherent story." *Id.* at 756. That inference was permissible because two of the criminal co-defendants sought leniency in return for their pleas. Two other criminal co-defendants "came to believe that they were present through suggestion, systemic pressure and a reliance on 'memories' recovered in their dreams." *Id.* The final witness confessed only after she was told she was present for the murder. *Id.*

Here, Ferguson has set forth abundant evidence that Erickson sought leniency and sought to avoid the death penalty. Further, Erickson has made clear that he came to believe he was guilty, due to the fabrication of evidence by Defendants.

62

In the end, the *White* Court concluded that there was evidence that defendants:

> Successfully coerced and threatened White's co-defendants into implicating themselves and White in Wilson's murder; repeatedly ignored inconsistencies and implausibilities in the testimony implicating White; and exercised systematic pressure to procure White's conviction despite the unreliability of the evidence that he was involved. Ultimately, **White was placed in the nightmare scenario** of having to maintain his innocence in the face of five co-defendants who were systematically manipulated or convinced into falsely accusing White of rape and murder.

*Id.* at 757-758 (emphasis added).

Because such conduct shocked the conscience, the Court denied summary judgment.

The same result must be reached here. As a result of the Defendants' investigation, Ferguson "was placed in the nightmare scenario of having to maintain his innocence in the face of" Erickson, who was "systematically manipulated or convinced into falsely accusing" him of the murder. Ferguson has shown that Defendants recognized the deficiencies in the case and deliberately manufactured false evidence to fill the gaps. *Id.* at 758.

## VI. GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM TO BE FOR PURPOSES OF SUMMARY JUDGMENT, DEFENDANTS CONSPIRED TO DEPRIVE FERGUSON OF HIS CONSTITUTIONAL RIGHTS.

Defendants argue that the district court erred in denying qualified immunity as Ferguson failed to show he was deprived of a constitutional right and also failed

63

to present evidence sufficient to support the conclusion that Defendants reached an agreement to deprive him of his constitutionally guaranteed right. (App. Br. at 85).

As the district court found and as Ferguson has shown above, sufficient evidence was presented to establish that Ferguson was deprived of his constitutional right to due process. Defendants' additional argument that the evidence of a conspiracy was insufficient is not proper for this interlocutory appeal. In the event this Court chooses to address Defendants argument, it should be quickly dismissed.

To allege a § 1983 conspiracy claim, a plaintiff must plead and support with factual allegations "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008). Plaintiff must produce "some facts suggesting ... a meeting of the minds." *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

Ferguson has presented sufficient evidence as to all of these elements. The district court found that Sergeant Monticelli held meetings with Defendants where the investigation would be discussed and lead cards would be generated. Order at 60; App. 9491. The district court added that the Defendants would complete interviews in tandem and utilize coercive tactics. *Id.* Those interviews resulted in

64

fabricated reports. *Id.* Further, the district court examined the record and explained that it revealed a pattern of Defendants interviewing suspects and failing to complete reports. *Id.* This evidence was properly deemed sufficient to create a jury question regarding whether Defendants engaged in a conspiracy.

The district court's conclusions are supported by overwhelming evidence. There were numerous meetings, usually one or two a day wherein Defendants would bring "up what they've done, important information." App. 7739. Police reports would be reviewed. App. 7739-7740. Defendants shared information about the investigation. App. 7344-7345; 4077-4078. Defendants were aware that the basis for probable cause rested exclusively on the statements allegedly made by Erickson. App. 7883. These statements were demonstrably false. App. 7108-7109; 7134; 7028; 6894; 6891-6892; 9498 at OFFICERS 29, OFFICERS 872; OFFICERS 19. The report of the unrecorded interview of Erickson was fabricated as it was amended after the videotaped interview was completed in order to interject the information from the leading questions into the fabricated report. App. 9498 at OFFICERS 892; App. 2969-2971. Defendants were well aware Erickson was not a credible witness before Ferguson was arrested. App. 9498 at OFFICERS 1064.

Defendant Westbrook fabricated the statements of Mallory with the assistance of Defendants Liebhart and Short. App. 6679-6685; 6687; 6689-6690;

65

6926-6929; 6964-6968; 8815-8817; 7153; 9498 at OFFICERS 847-850; 4255; 7011; 4052; 3513-3514; 7407; 3138-3139; 4256. Defendant Stroer wrote up the unrecorded interview report of Walker after the recorded interview of Walker was completed. Defendant Leibhart knew that Mr. Walker was not a credible witness. App. 3249. Defendants were meeting frequently and discussing the investigation. Defendants knew or should have known of the fabrications.

Ferguson has also identified several *Brady* violations.[5] Defendant Short failed to disclose the original interview report of Erickson. App. 9498 at OFFICERS 892; App. 2969-2971. Defendant Westbrook fabricated the original report of his interview with Mallory to insert the paragraph that confirmed that Mallory had seen Erickson near the murder scene. Defendant Short admitted Mallory had not made that statement, so Defendant Short knew the report was fabricated. App. 7153. Defendant Short did not document his second meeting with Boyd at the Columbia Police Station and Defendants knew the meeting was not documented. App. 8518-8519. Defendant Short also did not document the portion of his interview with Kim Bennett wherein she described seeing Ferguson and Erickson leaving the By George in Ferguson's car. App. 6176-6177; 7173-7174; 7175; 9498 at OFFICERS 1229-1231.

---

[5] Although the district court granted Defendants' motion for summary judgment as to the *Brady* claims, the district court found the violations to be circumstantial evidence supporting the conspiracy claim. (App. 9491).

Appellate Case: 15-2857   Page: 75   Date Filed: 03/22/2016 Entry ID: 4380398

Additional evidence demonstrates that Defendants acted pursuant to a conspiracy. Defendants ignored Michael Boyd as a suspect despite the facts that he was the last known person with the victim at the time of the murder, he placed himself in the parking lot throughout the time Defendants hypothesized the victim was murdered, the statements he gave to Defendant Short and Defendant Simons were inconsistent, he feared that his license plate could have been viewed as he left the scene and he had a strained relationship Mr. Heitholt at the time of the murder. App. 9498 at OFFICERS 72-74; App. 8518-8519; 8370-8371; 7074; 8358; 8371; 8349; 6859-6860; 6814; 8376-8377; 8810-8811.

Defendants cite *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987) in support of their argument. They argue that "a commonly held belief is not a conspiracy" and that investigators engaged in investigating and reporting suspected criminal activity is not a conspiracy. (App. Br. at 85). These principles are not at issue here. Ferguson has presented evidence that Defendants worked together to fabricate evidence from multiple witnesses that Ferguson was involved in the murder. Defendants withheld evidence that suggested Ferguson was not involved. Sufficient evidence has been produced to establish Defendants committed their acts to perpetuate their narrative that Ferguson had committed the murder.

## VII. GIVEN THE FACTS AS THE DISTRICT COURT FOUND THEM TO BE FOR THE PURPOSES OF SUMMARY JUDGMENT, DEFENDANTS MALICIOUSLY PROSECUTED AND FALSELY ARRESTED FERGUSON.

Defendants seek to dismiss Ferguson's state law claims for malicious prosecution and false arrest with the same argument. As they have done throughout their brief, they argue that Court should adopt their version of the facts.

Initially, Defendants argue that Ferguson's malicious prosecution claims are barred by official immunity. (App. Br. at 87). As the district court found and Defendants admit, official immunity does not extend to discretionary acts performed with malice or in bad faith. Order at 58; App. 9489; (App. Br. at 87-88). By its very nature, the fabrication of evidence involves bad faith and malice. Thus, because Ferguson has shown that Defendants fabricated evidence, this evidence alone defeats Defendants' claim. Defendants' argument that they used their discretion to merely interview witnesses and write reports ignores the evidence of fabrication. Defendants threatened witnesses and falsified reports. Those are not discretionary acts. Certainly, as the district court held "Ferguson has presented sufficient evidence to create a genuine issue of material fact regarding [Defendants'] state of mind in compiling the case against Ferguson." Order at 58; App. 9489.

Oddly, Defendants cite *Blue v. Harrah's N. Kan. City,* 170 S.W.3d 466 (Mo. App. 2005). Defendants reference to *Blue* is odd because that court found a

genuine issue of material fact regarding whether the defendant officer engaged in conscious wrongdoing. (App. Br. at 88). After Defendants cite the case they attempt to distinguish it. They argue that here, they merely interviewed witnesses, drafted police reports and presented them to the prosecutor. In casting their conduct in this light, Defendants ignore the evidence that they recklessly investigated, threatened witnesses, fabricated reports, and misled the prosecutor. Ferguson has presented overwhelming evidence that Erickson was fed information, asked leading questions and indoctrinated to testify falsely against Ferguson. A jury may certainly find that Defendants engaged in conscious wrongdoing sufficient to preclude their claim of immunity.

More evidence of obviously conscious wrongdoing has been presented. For example, Mallory testified that he was threatened and told to implicate Ferguson. App. 6648; 6651-6652. Therefore, the report reflecting that he had implicated Ferguson is false. App. 6926-6929. Defendants are free to explain to the jury their explanation that the fabrication resulted from trouble with the computer system (App. 4255) but evidence of their fabrication is clearly sufficient at this stage to defeat summary judgment.

The district court correctly found that there are factual disputes as to whether the fabricated evidence was a component of what Judge Crane reviewed in initiating the prosecution. Order, at 58; App. 9489. While Defendants may have

69

their own explanations for what they did, as in *Blue*, their version of events does not prevail here. Further, with this argument, Defendants are obviously not accepting the district court's facts, but arguing that Ferguson's evidence was insufficient. As such, their argument is misplaced.

Defendants next argue that this Court has jurisdiction to review the facts and determine whether there was probable cause for the prosecution, citing *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1083 (8th Cir. 2005). (App. Br. at 88). Defendants are incorrect and their citation to *Neb. Beef* is curious. In *Neb Beef*, this Court found that it had jurisdiction to determine whether a *Bivens* remedy was available to the Appellee. The existence of such a remedy was purely a legal question. *Id.* at 1083. Because Defendants have failed to present this court with a purely legal question, they find no support in that case.

Here, as the district court found, Ferguson presented sufficient evidence that "the reports and observations given by [Defendants] to Crane, the prosecutor, contained fabricated evidence." Order at 57; App. 9488. The district court also found that "factual disputes exist as to whether [Defendants] intentionally manufactured false evidence that was a component of what Judge Crane reviewed in initiating the prosecution." Order at 58; App. 9488. Simply put, Ferguson has shown that Defendants fabricated false probable cause in causing his arrest and prosecution. Thus, not only do factual disputes exist to deny Defendants' claim,

but also they are protected by immunity as to Ferguson's malicious prosecution cause of action. Defendants' claim is not a legal issue, thus no jurisdiction to review the claim exists in this interlocutory appeal.

Defendants claim Ferguson's claim for false arrest is barred by immunity and that probable cause existed for Ferguson's arrest. (App. Brief at 90). For the same reasons set forth above in response to Defendants' arguments involving malicious prosecution, their arguments lack merit.

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that this Court either dismiss the appeal because Defendants' qualified immunity arguments are waived, dismiss the appeal for lack of jurisdiction and/or affirm the district court's denial of summary judgment. In any event, the case should be remanded for trial.

Respectfully submitted,


/s/Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
Phone: (630) 955-1212
Fax: (630) 955-1111
Email: kathleen.zellner@gmail.com

/s/Samuel Henderson
Samuel Henderson
Samuel Henderson, #56330
1027 S. Vandeventer Avenue, Floor 6
St. Louis, Missouri 60515
Phone: (314) 399-8266
Fax: (314) 399-8265
Email: hendersa85@hotmail.com

Appellate Case: 15-2857    Page: 80    Date Filed: 03/22/2016 Entry ID: 4380398

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 16,133 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2007 in Times New Roman 14 point font, which is no more than 20,000 words allowed by order of this Court.

/s/Kathleen T. Zellner
Kathleen T. Zellner

72

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s/Kathleen T. Zellner
Kathleen T. Zellner

Appellate Case: 15-2857    Page: 82    Date Filed: 03/22/2016 Entry ID: 4380398

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 21, 2016, an electronic copy of the Brief of Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participant in this case is a registered CM/ECF user and that service of the Brief will be accomplished by the CM/ECF system:

Christopher Perry Rackers
Bradley Christopher Letterman
SCHREIMANN & RACKERS
931 Wildwood Drive
Suite 201
Jefferson City, MO 65109
Email: cpr@srfblaw.com
Email: bcl@srfblaw.com

/s/Kathleen T. Zellner
Kathleen T. Zellner

Appellate Case: 15-2857    Page: 83    Date Filed: 03/22/2016 Entry ID: 4380398